OPINION
 

 THOMPSON, Presiding Judge.
 

 ¶ 1 Hayden Business Center Condominiums Association (the Association) appeals the grant of summary judgment on its claim for breach of the implied warranty of good workmanship and challenges the trial court’s denial of its motion to amend the complaint. We have jurisdiction and affirm.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 ¶ 2 Hayden Airpark Venture, L.L.C. (HAV) developed and built the Hayden Business Center, a commercial building in Scottsdale. Pegasus Development Corporation (Pegasus) performed construction-related services for HAV in exchange for a flat monthly fee. The parties dispute whether Pegasus was a general contractor or a construction manager for HAV.
 

 ¶ 3 HAV sold condominium interests in the Hayden Business Center to various persons who now claim that the building contained construction defects. These buyers assigned their claims to the Association. The Association then sued HAV and Pegasus for breach of the implied warranty of good workmanship.
 

 ¶ 4 Pegasus successfully moved for summary judgment. The trial court acknowledged that a fact question existed as to whether Pegasus served as a general contractor or a construction manager. If Pegasus were a construction manager, there could be no implied warranty of good workmanship that could run to subsequent purchasers. The trial court determined that even if Pegasus had been the general contractor, the Association’s claim still failed because no Arizona authority extends the implied warranty of good workmanship to claims by subsequent purchasers of commercial property.
 

 ¶ 5 The trial court also considered whether the Association could bring a tort claim. In a pleading, the Association conceded that it had no tort claim because the bulk of its damages consisted of expenses to remedy and repair defective work. Applying the economic loss rule, the trial court concluded that the Association was barred from recovering under a tort theory.
 

 ¶ 6 After the grant of summary judgment, the Association moved to amend the complaint to add a negligence count and re-characterized some of its repair costs as property damage. The trial court denied the Association’s motion to amend, and entered a Rule 54(b) judgment in favor of Pegasus. This appeal followed.
 

 DISCUSSION
 

 A. As a Matter of Law, the Association Has No Implied Warranty Claim Against Pegasus.
 

 ¶ 7 This court reviews a grant of summary judgment de novo.
 
 Great Am. Mortgage, Inc. v. Statewide Ins. Co.,
 
 189 Ariz. 123, 125, 938 P.2d 1124, 1126 (App.1997). We view the facts and the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in favor of that party.
 
 AROK Constr. Co. v. Indian Constr. Svcs.,
 
 174 Ariz. 291, 293, 848 P.2d 870, 872 (App.1993).
 

 1. Arizona Law Does Not Support Extending the Claim Beyond the Home-Building Context.
 

 ¶ 8 An implied warranty of good workmanship claim is a contract claim, and it
 
 *503
 
 has long been the law that only parties to a contract may maintain an action on it.
 
 Treadway v. Western Cotton Oil & Ginning Co.,
 
 40 Ariz. 125, 138, 10 P.2d 371, 375 (1932);
 
 Leal v. Allstate Ins. Co.,
 
 199 Ariz. 250, 254, ¶ 21, 17 P.3d 95, 99 (App.2000)(stranger to an insurance contract could not sue the insurer in tort for a bad faith breach);
 
 Stratton v. Inspiration Consolidated Copper Co.,
 
 140 Ariz. 528, 531, 683 P.2d 327, 330 (App.1984)(as a matter of law, a subcontractor could not sue the owner absent privity of contract). Exceptions exist, as in the case when the contracting parties specify a non-party as the intended beneficiary.
 
 See Sherman v. First Am. Title Ins. Co.,
 
 201 Ariz. 564, 567, ¶ 6, 38 P.3d 1229, 1232 (App.2002).
 

 ¶ 9 The Arizona Supreme Court created one such exception in
 
 Richards v. Powercraft Homes, Inc.,
 
 139 Ariz. 242, 678 P.2d 427 (1984). The
 
 Richards
 
 plaintiffs bought homes in a Casa Grande subdivision only a few years after Powercraft built them. The plaintiffs did not, however, purchase their homes from Powercraft; they bought from previous owners. When construction defects appeared, the plaintiffs sued Powercraft for breach of the implied warranties of habitability and good workmanship. The supreme court held that the
 
 Richards
 
 plaintiffs could bring this claim even though they had no contractual relationship with the homebuilder.
 
 Id.
 
 at 245, 678 P.2d at 430.
 

 ¶ 10 The court grounded its holding in
 
 Richards
 
 on the public policy considerations pertaining to new home construction. Home building, it noted, “is frequently undertaken on a large scale” and “homebuyers are generally not skilled or knowledgeable in construction, plumbing, or electrical requirements.”
 
 Id.
 
 It also noted that:
 

 the character of our society is such that people and families are increasingly mobile. Home builders should anticipate that the houses they construct will eventually, and perhaps frequently, change ownership. The effect of latent defects will be just as catastrophic on a subsequent owner as on an original buyer and the builder will be just as unable to justify improper or substandard work.
 

 Id.
 
 Based upon these considerations, the
 
 Richards
 
 court held that the homebuilder’s implied warranty of good workmanship runs to subsequent purchasers.
 
 Id.
 

 ¶ 11 The progeny of
 
 Richards
 
 make two things clear. First, a subsequent purchaser’s claim sounds in contract.
 
 See Woodward v. Chirco Constr. Co.,
 
 141 Ariz. 514, 516, 687 P.2d 1269, 1271 (1984)(a home purchaser can bring a contract claim for the cost of repairing defects, but can bring a tort claim only for injuries to person or personal property).
 

 ¶ 12 Second, the
 
 Richards
 
 exception applies only to homebuilder-vendors. For example, a plaintiff injured in a subdivision’s common pool sued the swimming pool contractor in
 
 Menendez v. Paddock Pool Construction Co.,
 
 172 Ariz. 258, 270, 836 P.2d 968, 980 (App.1991). The
 
 Menendez
 
 court held that the accepted work doctrine barred the claim. In response to the argument that
 
 Richards
 
 abolished the accepted work doctrine, the
 
 Menendez
 
 court explained that:
 
 “Richards
 
 and its progeny expanded implied warranty liability for the homebuilder-vendor but failed to address non-owner subcontractors like Paddock.”
 
 Id.
 

 ¶ 13 The language in
 
 Menendez
 
 indicates that
 
 Richards
 
 would not apply where a hom-ebuilder was not also a vendor. If a landowner hired a contractor to build a custom home for his own use, and later sold the home,
 
 Menendez
 
 suggests that the subsequent purchaser would have no implied warranty claim against the contractor.
 
 Id.
 
 This result is consistent with
 
 Rickards,
 
 which was grounded in both the mass-production of homes and in the gross disparity in sophistication between homebuilders and home buyers.
 
 Richards,
 
 139 Ariz. at 245, 678 P.2d at 430.
 

 ¶ 14 Based upon the public policy considerations in
 
 Richards,
 
 we see no basis to extend an implied warranty of good workmanship claim to subsequent purchasers of commercial buildings. Unlike the parties to a home sale, no gross disparity in sophistication generally exists between the buyers and sellers of commercial real estate. Moreover, unlike new homes, commercial buildings generally are not mass-produced. If, as
 
 Menendez
 
 suggests, the
 
 Richards
 
 exception does
 
 *504
 
 not apply to the residential contractor who is not a builder-vendor, then similarly it should not apply to the builder of a single commercial building.
 

 2. Other Jurisdictions Decline to Extend the Claim to Commercial Construction as a Matter of Policy.
 

 ¶ 15 Other jurisdictions have likewise refused to extend the cause of action to commercial construction, noting significant differences between commercial and residential construction. For example, in
 
 Boston Investment Property v. E.W. Burman, Inc.,
 
 a developer hired a general contractor to build a commercial building, and then sold it to the plaintiff. 658 A.2d 515 (R.I.1995). When construction defects appeared, the plaintiff sued the general contractor for the costs of remedying the defects. The Rhode Island Supreme Court held that the plaintiff could not bring suit absent a contractual relationship with the contractor.
 
 Id.
 
 at 518.
 

 ¶ 16 The
 
 Boston Investment
 
 court reasoned that buyers of commercial property have the opportunity to inspect and inquire into defects prior to purchase, or can protect themselves from economic damages through contractual arrangements.
 
 Id.
 
 at 517. “In the case of sophisticated commercial entities in the commercial real estate market,” it noted, “contract law is the proper device to allocate economic risk.”
 
 Id.
 
 at 518.
 

 ¶ 17 Four years later, the same court abolished the privity requirement for subsequent purchasers of residential property, yet left
 
 Boston Investment
 
 intact.
 
 See Nichols v. R.R. Beaufort & Associates, Inc.,
 
 727 A.2d 174, 178 (R.I.1999). Like
 
 Richards,
 
 the
 
 Nichols
 
 decision is grounded in public policy considerations unique to homebuilding.
 
 Id.
 
 at 179-81. Quoting
 
 Boston Investment,
 
 the court distinguished between residential and commercial construction:
 

 Recently ... this Court affirmed the need for contractual privity in a commercial setting ...
 

 Accordingly, in
 
 [Boston Investment
 
 ], we held that in the absence of any privity of contract with the builder, a subsequent purchaser of a commercial building in Rhode Island was not entitled to recover economic damages resulting from the general contractor’s alleged negligence in constructing the building.
 

 Id.
 
 at 178.
 

 ¶ 18 For similar reasons, the Missouri Court of Appeals declined to allow a plaintiff, who stood in the shoes of a lessee, to sue the builder of a sports arena in
 
 Chubb Group v. C.F. Murphy & Associates, Inc.,
 
 656 S.W.2d 766 (Mo.Ct.App.1983). It reached this decision both because there was no privity between the parties and because it refused to extend the implied warranty to commercial construction.
 
 Id.
 
 at 782-83.
 
 [1]
 

 3. Privity Is Not a “Technical” Requirement.
 

 ¶ 19 The Association also protests that the technical requirement of privity should not stand in the way of its recovery. Time after time, however, Arizona courts have insisted on privity for breach of contract claims.
 

 
 *505
 
 ¶ 20
 
 Stratton
 
 demonstrates the point. In
 
 Stratton,
 
 a subcontractor sued the project owner after a general contractor failed to pay for the work done. 140 Ariz. at 529-30, 683 P.2d at 328-29. The lack of privity between the subcontractor and the project owner barred the claim: “Since there was no privity of contract between appellant and ... appellant has no claim for a personal judgment sounding in breach of contract.”
 
 Id.
 
 at 530-31, 683 P.2d 327.
 

 ¶ 21 This court reached the same result in a different context in
 
 Leal.
 
 Leal was injured in an accident caused by Allstate’s insured. 199 Ariz. at 251-52, ¶¶ 3-7, 17 P.3d at 96-97. When Allstate failed to make a satisfactory settlement offer, Leal sued for bad faith.
 
 Id.
 
 at 252, 17 P.3d at 97. We held that insurance bad faith derives from an insurance contract and “a stranger to the contract” cannot bring an action under it absent an assignment. 199 Ariz. at 254, ¶ 21, 17 P.3d at 99.
 

 ¶ 22 The Association nevertheless contends that privity was not required for an implied warranty claim in
 
 Donnelly Construction Co. v. Oberg/Hunt/Gilleland,
 
 139 Ariz. 184, 677 P.2d 1292 (1984). There, our supreme court held that a contractor who reasonably and foreseeably relies upon defective plans can bring negligence and implied warranty claims against the architect who prepared them despite the lack of privity.
 
 Donnelly,
 
 139 Ariz. at 188-89, 677 P.2d at 1296-97.
 
 Donnelly
 
 says nothing about what claims a subsequent purchaser may bring against a contractor, nor does it concern construction defects.
 
 See Colberg v. Rellinger,
 
 160 Ariz. 42, 47, 770 P.2d 346, 351 (App.1988)
 
 (“Don-nelly
 
 did not involve a claim of negligent construction nor a claim of implied warranty of workmanlike performance and habitability.”).
 
 [2]
 

 ¶ 23 Equally unavailing is the Association’s argument that Arizona product liability cases eliminate the privity requirement for all eon-tract claims that can be pigeon-holed as a “breach of warranty.” Those cases hold only that a manufacturer’s warranty runs to those who purchase its product, even if purchased from a retailer.
 
 See Rocky Mountain Fire and Cas. Co. v. Biddulph Oldsmobile,
 
 131 Ariz. 289, 294, 640 P.2d 851, 856 (1982);
 
 Seekings v. Jimmy GMC of Tucson, Inc.,
 
 130 Ariz. 596, 601, 638 P.2d 210, 215 (1981). Like
 
 Richards,
 
 those cases carve out a limited exception to the privity requirement based upon public policy considerations. As the Association itself points out, those are common law implied warranty claims outside the U.C.C.
 

 ¶ 24 We also are not persuaded that privity must be eliminated in order to protect real estate purchasers against insolvent sellers or developers who structure “shell companies” to avoid liability for defective construction. The Association presents no evidence that the problem is pervasive enough to require a blanket exception to the privity requirement. Moreover, the risk of insolvency is hardly unique to real estate contracts. Accordingly, we uphold the privity requirement in commercial cases and affirm the trial court’s grant of summary judgment to Pegasus.
 

 B. The Trial Court Did Not Abuse its Discretion in Denying the Motion to Amend the Complaint.
 

 ¶ 25 The Association also appeals the trial court’s denial of leave to amend the complaint to add a negligence claim against Pegasus. The decision on amendment lies within the trial court’s discretion, which we will uphold absent “a clear abuse of discretion.”
 
 Hall v. Romero,
 
 141 Ariz. 120, 124, 685 P.2d 757, 761 (App.1984). Denying leave to amend is not an abuse of discretion when there is undue delay, repeated failure to cure deficiencies through previous amendments, undue prejudice, or when the amendment would be futile.
 
 In re Torstenson’s Estate,
 
 125 Ariz. 373, 376-77, 609 P.2d 1073, 1076-77 (App.1980). Leave to amend is also properly
 
 *506
 
 denied when the proffered amendment could not affect the outcome of the litigation, that is, when it is legally insufficient on its face.
 
 Id.
 
 at 377, 609 P.2d at 1077 (citation omitted).
 

 ¶ 26 After the grant of summary judgment, the Association attempted to add a claim against Pegasus for negligence.
 
 Woodward
 
 precludes this effort. It holds that a purchaser of real property can bring a tort action for personal injury or for damage to personal property, but can only sue in contract for economic harm arising out of defective construction.
 
 Woodward,
 
 141 Ariz. at 516, 687 P.2d at 1271;
 
 see Colberg,
 
 160 Ariz. at 46-47, 770 P.2d at 350-51 (relying on
 
 Woodward
 
 to hold that a homeowner cannot bring a tort claim for construction defects).
 

 ¶ 27 This authority is rooted in the economic loss rule, which precludes a party from circumventing contract remedies by recasting a contract claim as a tort.
 
 See Apollo Group, Inc. v. Avnet, Inc.,
 
 58 F.3d 477, 481 (9th Cir.1995) (applying Arizona law and holding that the economic loss rule barred the plaintiff from recasting a U.C.C. breach of warranty claim as a “common law” tort-based breach of warranty claim). The economic loss rule thus bars the Association from recovering any economic losses under a tort theory. See
 
 id.
 

 ¶ 28 The proposed amended complaint attempts to skirt this issue by adding claims for personal injury and harm to personal property. The Association, however, cannot assert a personal injury claim on behalf of the buyers because such claims are generally not assignable.
 
 See Botma v. Huser,
 
 202 Ariz. 14, 17, ¶ 11, 39 P.3d 538, 541 (App.2002). The Association informed the trial court during the summary judgment briefing that “the bulk of the damages are to correct work improperly done” and therefore the Association’s “only viable cause of action” was for breach of the implied warranty of good workmanship. This admission justifies the denial of leave to amend.
 

 ¶ 29 Moreover, the Association did not disclose any harm to personal property or personal injury. Its Rule 26.1 disclosure statement lists $70,518.65 in damages for performing soil testing, consulting, flooring removal, environmental testing, re-carpeting, sealing the footings, installing the drainage system, and landscape repair. All of these items relate to the structure itself and qualify as repair costs.
 
 See Carstens v. City of Phoenix,
 
 206 Ariz. 123, 128, ¶ 21, 75 P.3d 1081, 1086 (App.2003)(holding that losses incurred for shutdown, start-up, testing and/or lost profits stemming from equipment failure were economic in nature).
 

 ¶ 30 Moreover, carpeting and landscaping are not considered personal property separate from the property. Carpeting is a fixture and part of the building’s structure.
 
 See In re Bernhardt,
 
 186 B.R. 889, 891 (Bankr.E.D.Pa.1995)(wall-to-wall carpeting is generally considered a fixture). Re-carpeting and re-landscaping are all part of remedying defective work. While the cost of that work may be consequential harm recoverable in a contract action, it does not support a separate tort claim.
 
 See Colsant v. Goldschmidt,
 
 97 Ill.App.3d 53, 52 Ill.Dec. 210, 421 N.E.2d 1073, 1077 (1981)(holding that the cost of replacing carpet was a cost of remedying a construction defect).
 

 CONCLUSION
 

 ¶ 31 We affirm the trial court’s rulings in all respects. In addition, we grant Pegasus its reasonable attorneys’ fees in accordance with Arizona Revised Statutes (A.R.S.) section 12-341.01(A) subject to its compliance with Rule 21(c) of the Arizona Rules of Civil Appellate Procedure.
 

 CONCURRING: JOHN C. GEMMILL and PATRICK IRVINE, Judges.
 

 [1]
 

 . The Association relies upon a series of non-Arizona cases in support of their contention that privity is no longer required for commercial claims, including
 
 May v. Ralph L. Dickerson Construction Corp.,
 
 560 So.2d 729 (Miss.1990) and
 
 Moyer v. White,
 
 48 Pa. D. & C.3d 487 (Ct. Common Pleas 1988). For the following reasons, we are not persuaded.
 
 May
 
 was based on a Mississippi statute stating that "privity shall not be a requirement” in any action for breach of warranty.
 
 May,
 
 560 So.2d at 730-31 (quoting Miss. Code Ann. § 11-7-20).
 
 Moyer,
 
 a trial court opinion, did find privity was not required in a lawsuit brought by a subsequent purchaser of an apartment building. 48 Pa. D. & C.3d at 487.
 
 Moyer,
 
 however, conflicts with an appellate opinion in
 
 Manor Junior College v. Kaller’s Inc.,
 
 352 Pa.Super. 310, 507 A.2d 1245 (1986).
 
 Manor
 
 holds that a property owner cannot bring an implied warranty claim against a subcontractor with whom it has no contractual relationship.
 
 Manor,
 
 507 A.2d at 1249.
 

 The Association also relies upon a Pennsylvania case involving a commercial building,
 
 Pittsburgh National Bank v. Welton Becket Associates,
 
 601 F.Supp. 887 (W.D.Pa.1985), but that case did not involve a subsequent purchaser. Nor are we persuaded by
 
 Hodgson v. Chin,
 
 which permitted the subsequent purchasers to pursue implied warranty claims for defects in “commercial” buildings, each of which contained two apartments as well as two stores. 168 N.J.Super. 549, 403 A.2d 942 (App.Div.1979).
 

 [2]
 

 . For these reasons, we find that the Association has misplaced its reliance upon
 
 Eastern Steel Constructors, Inc. v. City of Salem,
 
 209 W.Va. 392, 549 S.E.2d 266 (2001). Like
 
 Donnelly, Eastern Steel
 
 analyzes the claims available to a contractor who relied upon a design professional’s plans in constructing a sewer line.
 
 Eastern Steel
 
 holds that claims for negligence and implied warranty are not barred as a matter of law. It does not discuss the claims available to subsequent purchasers or the implied warranty of good workmanship.