189 P.3d 426

**THE LOFTS AT FILLMORE CONDO-MINIUM ASSOCIATION, an Arizona nonprofit corporation, Plaintiff/Appellant,**

v.

**RELIANCE COMMERCIAL CONSTRUCTION, INC., an Arizona corporation, Defendant/Appellee.**

No. 1 CA–CV 06–0257.

Court of Appeals of Arizona, Division 1, Department C.

Nov. 6, 2007.

Review Granted April 22, 2008.

---

Thorsnes Bartolotta McGuire By John F. McGuire, Jr., Karen R. Frostrom, San Diego, CA, Ekmark & Ekmark By Curtis S. Ekmark, Lisa A. Cullins, Matthew B. Meaker, Quentin T. Phillips, Scottsdale, for Plaintiff/Appellant.

Bremer Whyte Brown & O'Meara LLP By Peter C. Brown, Jeffrey D. Holland, John J. Belanger, Israel & Gerity PLLC By Kyle A. Israel, Jeffrey R. Cobb, Phoenix, for Defendant/Appellee.

## OPINION

BARKER, Judge.

¶ 1 We address whether the exception to the privity requirement for a claim of breach of the implied warranty of habitability and workmanlike construction, set forth in *Richards v. Powercraft Homes, Inc.*, 139 Ariz. 242, 678 P.2d 427 (1984), is limited to "home-

builder-vendors" and, if so, whether the exception should be expanded to non-vendor homebuilders on public policy grounds. For the reasons below, we agree with the trial court that the *Richards* exception is so limited, and we decline to extend its boundaries.

## I.

¶ 2 The Lofts at Fillmore Condominium Association ("Lofts") appeals from the trial court's summary judgment in favor of Reliance Commercial Construction, Inc. ("Reliance") on Lofts' claim for breach of the implied warranty of habitability and workmanlike construction.

¶ 3 We review a trial court's summary judgment de novo to determine whether a genuine dispute exists about any material fact and whether the moving party was entitled to judgment as a matter of law. *Orme Sch. v. Reeves*, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990); *Schwab v. Ames Constr.*, 207 Ariz. 56, 60, ¶ 17, 83 P.3d 56, 60 (App. 2004). We view the facts in the light most favorable to the party opposing the summary judgment motion. *Orme Sch.*, 166 Ariz. at 305, 802 P.2d at 1004.

¶ 4 In this case, the material facts are few and undisputed. Reliance contracted with William Mahoney and The Lofts at Fillmore, L.L.C. (collectively "Developers") to perform work on a residential condominium conversion project the Developers owned and designed. Lofts members purchased condominiums in the project from Developers. The sole issue on review is whether Lofts has an implied warranty claim against Reliance for alleged construction defects when neither Lofts nor its members had a contractual relationship with Reliance for its work on the project. The trial court found that no claim existed. We agree.

## II.

### A.

¶ 5 "An implied warranty of good workmanship claim is a *contract claim*, and it has long been the law that only parties to a contract may maintain an action on it." *Hayden Bus. Ctr. Condo. Ass'n v. Pegasus Dev. Corp.*, 209 Ariz. 511, 512–13, ¶ 8, 105 P.3d 157, 158–59 (App.2005) (emphasis added). The warranty allows a purchaser to "recover in contract for defects in the structure itself as such defects render the home less than the purchaser bargained for." *Woodward v. Chirco Constr. Co.*, 141 Ariz. 514, 516, 687 P.2d 1269, 1271 (1984) (emphasis added).[1]

¶ 6 Lofts first argues, as it did below, that our Supreme Court "abolished the privity requirement" for an implied warranty claim in *Richards*, 139 Ariz. at 242, 678 P.2d at 427. But we do not read the decision in *Richards* as broadly as Lofts urges we ought. Although *Richards* created an exception to the privity requirement, it did not abolish the need to establish privity in all implied warranty claims.

¶ 7 The plaintiffs in *Richards* had purchased homes in a subdivision built by Powercraft Homes. *Id.* at 243, 678 P.2d at 428. Some of the plaintiffs had purchased directly from Powercraft, but others had purchased from previous owners. *Id.* The only issue in *Richards* was whether the implied warranty identified in *Columbia Western Corp. v. Vela*, 122 Ariz. 28, 592 P.2d 1294 (App.1979), extended to these subsequent purchasers. *Id.* The court found that it did based on the same policy considerations underlying the imposition of the implied warranty to first purchasers. *Richards*, 139 Ariz. at 245, 678 P.2d at 430. Essentially, the court in *Columbia Western* had determined that public policy favored protection of innocent purchasers against builder-vendors who tend to be larger, more sophisticated entities. 122 Ariz. at 32–33, 592 P.2d at 1298–99. The court found that imposition of the implied warranty was appropriate given modern construction industry practices as well as the relative abilities of buyers and builder-vendors to discover latent construction defects. *Id.*

¶ 8 We recognized limitations to the *Richards* decision in *Hayden*. There, we held that "the *Richards* exception [to the privity

---

1. Accordingly, we reject Lofts' assertion that a "plaintiff may bring an implied warranty claim even though the plaintiff does not have a contract claim" based on a breach-of-duty theory.

requirement] applies only to homebuilder-vendors." 209 Ariz. at 513, ¶ 12, 105 P.3d at 159 (finding privity required for implied warranty claim in commercial construction). We relied in part on *Menendez v. Paddock Pool Construction Co.*, 172 Ariz. 258, 270, 836 P.2d 968, 980 (App.1991), in which this court stated that "*Richards* and its progeny expanded implied warranty liability for the homebuilder-vendor but failed to address non-owner subcontractors like [the defendant in that case]." *Hayden*, 209 Ariz. at 513, ¶ 12, 105 P.3d at 159. We also interpreted *Menendez* to "indicate[ ] that *Richards* would not apply where a homebuilder was not also a vendor." *Id.* at 513, ¶ 13, 105 P.3d at 159.

¶ 9 We consider that "homebuilder-vendor" means a contractor who also sells to a purchaser who will live in the home. As to Reliance, that was not the case. Lofts argues that Reliance satisfied the vendor portion of the "builder-vendor" requirement because it "sold" its work to the developer. We reject this argument.

¶ 10 We agree with *Hayden* and *Menendez* that the exception to the privity requirement established in *Richards* applies only to a defendant that is both a builder *and* a vendor to a residential end-user. Although Lofts asserts various policy considerations not inconsistent with the policy underlying *Richards,* and which we discuss below, we do not interpret the language in *Richards* so broadly as to extend its exception to contractors who were not also involved in the sale of the property. This leads us to the next of Lofts' arguments, that the public policy underlying *Richards* should be extended to apply to builders.

### B.

¶ 11 In considering Lofts' argument that we should extend *Richards* on public policy grounds, we consider the primary function of the judicial branch as contrasted with that of the legislative branch.

¶ 12 In broad terms, the legislative branch has been assigned the law-making function. Ariz. Const. art. 4, Pt. 1, § 1(1) ("The legislative authority of the State shall be vested in the legislature. . . ."). This also applies generally to determining public policy for the State. *Harrison v. Laveen,* 67 Ariz. 337, 344, 196 P.2d 456, 460 (1948) ("The matter of determining what is 'good public policy' is for the executive and legislative departments."). As the Arizona Supreme Court stated many years ago:

> The declaration of 'public policy' is primarily a legislative function. The courts unquestionably have authority to declare a public policy which already exists and to base its decisions upon that ground. But in the absence of a legislative declaration of what that public policy is, before courts are justified in declaring its existence such public policy should be so thoroughly established as a state of public mind, so united and so definite and fixed that its existence is not subject to any substantial doubt.

*Ray v. Tucson Med. Center,* 72 Ariz. 22, 35–36, 230 P.2d 220, 229 (1951).

¶ 13 The judicial branch has been assigned the adjudicative function, determining when a law has been breached. Ariz. Const. art. 6, § 1 ("The judicial power shall be vested in an integrated judicial department. . . ."); *Stuart v. Norviel,* 26 Ariz. 493, 501, 226 P. 908, 910 (1924) ("Judicial power is the power of the court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision."); *Eastin v. Broomfield,* 116 Ariz. 576, 582, 570 P.2d 744, 750 (1977). Certainly, however, in determining whether a law has been breached it is necessary for the courts to "say what the law is." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."). To that extent, and as reflected in the common law, the judicial power includes a "law-making" function. *See Cronin v. Sheldon,* 195 Ariz. 531, 537–38, ¶¶ 25–32, 991 P.2d 231, 237–38 (1999) ("Courts do make law."); *cf. Collier v. O'Neil,* 63 Ariz. 320, 322–23, 162 P.2d 124, 124–25 (1945) ("Courts do not make law. That function of our government is left to the legislature."). As part of this function we "also participate in the development of public policy." *Cronin,* 195 Ariz. at 537, ¶ 27, 991

P.2d at 237. Yet, we should not construe this power so broadly as to take over the legislature's primary task of "law-making" when that power resides in the court only as a supportive or secondary function of the constitutional grant given us: the judicial power to decide whether the law has been violated or breached as between the parties before us. *See Stuart,* 26 Ariz. at 501, 226 P. at 910; *see also* Ariz. Const. art. 3 ("The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive and Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.").[2]

¶ 14 Here, Lofts' policy argument to do away with the privity requirement is based on the assertions, without significant support in the record, that "no single entity builds and sells homes anymore"; that "implied warranties will disappear from the current legal landscape in Arizona"; and "as a result millions of owners in Arizona who have purchased from an entity that was not the builder" will now be unable to recover for construction defects. *Appellant's Reply Brief* at 19. These are exactly the type of broad, fact-based policy questions that the legislative process was designed to address. *Supra* ¶ 13; *see also Hayden,* 209 Ariz. at 515, ¶ 24, 105 P.3d at 161 (rejecting the argu-

ment that "privity must be eliminated in order to protect real estate purchasers against insolvent sellers or developers who structure 'shell companies' to avoid liability for defective construction" as there was "no evidence that the problem is persuasive enough to require a blanket exception to the privity requirement."). Further, in what would be a more typical judicial setting, there is no assertion here that Reliance and the developer entered a type of "sham" agreement by which Reliance would be insulated from meeting its obligations to perform in a workman-like manner.

¶ 15 Thus, while we acknowledge that some of the policy considerations in *Richards* could be applied in favor of Lofts, we leave any further expansion of implied warranty liability of non-vendor builders to the authority and discretion of the legislature. That issue does not mainly turn on "say[ing] what the law *is,*" as per *Marbury.* Rather it turns on what the legislature would like the law *to be* after considering broad social policies and costs as applied to Arizona's housing and construction markets. Thus, we reject Lofts' invitation to expand the *Richards* exception based on public policy grounds.

### C.

¶ 16 Lofts also argues that privity is not required for an implied warranty claim based on *Donnelly Construction Co. v.*

---

2. The constraint on judicial power is particularly appropriate when we are dealing with legal issues the resolution of which turns on fact-intensive public policy questions that may be best addressed through the legislative process. *See Winsor v. Glasswerks PHX, L.L.C.,* 204 Ariz. 303, 311, ¶ 25, 63 P.3d 1040, 1048 (App.2003) (specifically declining to expand tort liability of successor corporations as "the policy of successor liability in Arizona should not be determined by an evaluation of one case presented for judicial review, but by a thorough consideration of the broader social policies and costs that is entrusted to the legislature in its representative capacity."); *Niece v. Elmview Group Home,* 131 Wash.2d 39, 929 P.2d 420, 431 (1997) ("It is particularly important to recognize the limits on our ability as an appellate court to decide complex questions of public policy where, as here, a decision to impose a new tort liability requires a consideration of factual matters extrinsic to the case before the court. The Legislature is uniquely able to hold hearings, gather crucial information,

and learn the full extent of the competing societal interests.' ") (citing *Burkhart v. Harrod,* 110 Wash.2d 381, 755 P.2d 759, 761 (1988)); *Leannais v. Cincinnati, Inc.,* 565 F.2d 437, 441 (7th Cir.1977) (recognizing certain policy issues are "best handled by legislatures with their comprehensive machinery for public input and debate"); *Myers v. Putzmeister, Inc.,* 232 Ill.App.3d 419, 173 Ill.Dec. 130, 596 N.E.2d 754, 758 (1992) (recognizing same principle); Restatement (Second) of Contracts § 179 cmt. b (1981) (addressing policy issues and stating that "[t]he declaration of public policy has now become largely the province of legislators rather than judges. This is in part because legislators are supported by facilities for factual investigations and can be more responsive to the general public."). These holdings are also consistent with our constitutional structure, described briefly above, placing the primary law-making function in the legislative branch and the adjudicative function in the judicial branch.

**504**

*Oberg/Hunt/Gilleland,* 139 Ariz. 184, 677 P.2d 1292 (1984), *rejected on other grounds by Gipson v. Kasey,* 214 Ariz. 141, 150 P.3d 228 (2007). We disagree. As we pointed out in *Hayden,* the court in *Donnelly* held

> that a contractor who reasonably and foreseeably relies upon defective plans can bring negligence and implied warranty claims against the architect who prepared them despite the lack of privity. *Donnelly,* 139 Ariz. at 188–89, 677 P.2d at 1296–97. *Donnelly* says nothing about what claims a subsequent purchaser may bring against a contractor, nor does it concern construction defects. *See Colberg v. Rellinger,* 160 Ariz. 42, 47, 770 P.2d 346, 351 (App.1988) ("*Donnelly* did not involve a claim of negligent construction nor a claim of implied warranty of workmanlike performance and habitability.").

209 Ariz. at 515, ¶ 22, 105 P.3d at 161. The court's statement in *Donnelly* that a "claim for breach of a common law warranty does not require privity" was clearly related to its conclusion that, absent an express guarantee, design professionals " 'warrant' merely that they have exercised their skills with care and diligence and in a reasonable, non-negligent manner." 139 Ariz. at 189, 677 P.2d at 1297. *Donnelly* has never been interpreted to abolish the need for privity for all implied-in-contract warranty claims.

**D.**

¶ 17 Lofts also cites a number of Arizona cases that support the proposition that Arizona has "long recognized that implied warranties exist separate and apart from contractual remedies." This statement is true as far as it goes. The cases cited do recognize a separate contractual remedy of an implied warranty; they do not recognize the existence of the warranty without a showing of privity of contract. *See Cameron v. Sisson,* 74 Ariz. 226, 230, 246 P.2d 189, 191 (1952) (the contractor who built a well owed an implied warranty to the party with whom he contracted); *Rosell v. Silver Crest Enterprises,* 7 Ariz.App. 137, 138, 436 P.2d 915, 916 (1968) (implied warranty owed by a fencing contractor to the person with whom he contracted); *Reliable Electric Co. v. Clinton Campbell Contractor, Inc.,* 10 Ariz.App. 371, 374, 459 P.2d 98, 101 (1969) (implied warranty of an electrical system contractor owed to the entity with which the contractor entered into the agreement); *Kubby v. Crescent Steel,* 105 Ariz. 459, 460, 466 P.2d 753, 754 (1970) (contractor building car storage shed owed an implied warranty to the entity with which the contractor entered into the agreement). The question here, of course, is whether the implied warranty at issue survives without privity.[3]

**III.**

¶ 18 For the foregoing reasons, the trial court's judgment is affirmed. Reliance is awarded its costs pursuant to A.R.S. § 12–342(A) (2003). Both parties have requested attorneys' fees under A.R.S. § 12–341.01 (2005). Assuming § 12–341.01 applies, those requests are denied.

CONCURRING: MAURICE PORTLEY, Presiding Judge, and SUSAN A. EHRLICH, Judge.

---

**3.** Lofts also argues that no contractual privity is required for its claim against Reliance based on Lofts' status as one "similar to a third-party beneficiary" and on A.R.S. §§ 12–522 and 12–1361. We do not address these arguments, however, because they were not raised in the trial court. *See Paloma Inv. Ltd. P'ship v. Jenkins,* 194 Ariz. 133, 137, ¶ 17, 978 P.2d 110, 114 (App.1998) ("New arguments may not be raised for the first time on appeal.").