SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| THE LOFTS AT FILLMORE CONDOMINIUM ASSOCIATION, an Arizona nonprofit corporation, | ) ) ) ) | Arizona Supreme Court No. CV-07-0416-PR |

THE LOFTS AT FILLMORE                  )  Arizona Supreme Court
CONDOMINIUM ASSOCIATION, an            )  No. CV-07-0416-PR
Arizona nonprofit corporation,         )
                                       )  Court of Appeals
            Plaintiff/Appellant,       )  Division One
                                       )  No. 1 CA-CV 06-0257
            v.                         )
                                       )  Maricopa County
RELIANCE COMMERCIAL CONSTRUCTION,      )  Superior Court
INC., an Arizona corporation,          )  No. CV2004-012726
                                       )
            Defendant/Appellee.        )
                                       )
                                       )
                                       )  **O P I N I O N**
_____      )


Appeal from the Superior Court in Maricopa County
The Honorable Kristin C. Hoffman, Judge

**REVERSED AND REMANDED**
_____

Opinion of the Court of Appeals, Division One
___ Ariz. ___, ___ P.3d ___ (2007)

**VACATED**
_____

THORSNES BARTOLOTTA McGUIRE                         San Diego, CA
     By   John F. McGuire, Jr.

And

EKMARK & EKMARK, L.L.C.                              Scottsdale
     By   Curtis S. Ekmark
          Quentin T. Phillips
Attorneys for The Lofts at Fillmore Condominium Association

BREMER, WHYTE, BROWN & O'MEARA, LLP                    Phoenix
     By   Jeffrey D. Holland
          John J. Belanger

And

ISRAEL & GERITY, PLLC                                      Phoenix
     By   Kyle A. Israel
          Jeffrey R. Cobb
Attorneys for Reliance Commercial Construction, Inc.

FEINBERG GRANT MAYFIELD KANEDA & LITT, LLP                 Phoenix
     By   Daniel H. Clifford
          Bruce Mayfield
          Charles R. Fenton
Attorneys for Amicus Curiae Regatta Pointe Condominium
Association

DICKS, COGLIANESE, LIPSON & SHUQUEM, APC                   Phoenix
     By   Michael D. Dicks
          Darrien O. Shuquem
Attorneys for Amici Curiae Alta Mesa Resort Village Homeowners
Association, Inc.; Bella Vista Condominium Homeowners
Association; Villages of Chandler: The Boardwalk Homeowners
Association, Inc.; Cave Creek Villas Homeowners Association,
Inc.; Kennedy Park Homeowners Association, Inc.; Mona Lisa
Village Homeowners Association; Scottsdale Abrivado Condominium
Association; The Salado Grand Residential Association, Inc.; Tre
Bellavia Homeowners Association, Inc.; and The Village at
Carefree Conference Resort Condominium Association, Inc.

KASDAN SIMONDS RILEY & VAUGHAN, LLP                        Phoenix
     By   Kenneth S. Kasdan
          Stephen L. Weber
          Michael J. White
Attorneys for Amicus Curiae Adobe Villas Condominium Association

ECKLEY & ASSOCIATES, P.C.                                  Phoenix
     By   J. Robert Eckley
          M. Philip Escolar
Attorneys for Amici Curiae National Association of Home
Inspectors, Inc. and American Society of Home Inspectors

BOROWSKY LAW, P.C.                                        Scottsdale
     By   Lisa M. Borowsky
Attorney for Amici Curiae Arizona Consumers Council and Consumer
Federation of America

KASDAN SIMONDS RILEY & VAUGHAN, LLP                          Phoenix
     By   Kenneth S. Kasdan
          Stephen L. Weber
          Michael J. White

And

OSBORN MALEDON, P.A.                                         Phoenix
     By   Thomas L. Hudson
Attorneys for Amicus Curiae Frye Park Townhomes Homeowner
Association
_____

**H U R W I T Z**, Justice

¶1      We consider today whether a homebuilder who is not also the vendor of the residence can be sued by a buyer for breach of the implied warranty of workmanship and habitability. We conclude that absence of contractual privity does not bar such a suit.

**I.**

¶2      William Mahoney and The Lofts at Fillmore, L.L.C. (collectively, "the Developer") contracted with Reliance Commercial Construction, Inc. ("Reliance") to convert a building owned by the Developer into condominiums. The Developer later sold condominium units to individual buyers, who formed The Lofts at Fillmore Condominium Association ("the Association"). Claiming various construction defects, the Association subsequently sued the Developer and Reliance for breach of the implied warranty of workmanship and habitability.

3

¶3     The superior court granted summary judgment to Reliance.  The court of appeals affirmed, finding the implied warranty claim barred because the Association had no contractual relationship with Reliance.  *The Lofts at Fillmore Condo. Ass'n v. Reliance Commercial Constr., Inc.*, ___ Ariz. ___, ___ P.3d ____, 2007 WL 3287391 (App. Nov. 6, 2007).  That court distinguished *Richards v. Powercraft Homes, Inc.*, which held "that privity is not required to maintain an action for breach of the implied warranty of workmanship and habitability," 139 Ariz. 242, 244, 678 P.2d 427, 429 (1984), because in *Richards* the builder was also the vendor of the property.  *The Lofts*, ___ Ariz. at ___ ¶¶ 6-10, ___ P.3d at ___.

¶4     We granted the Association's petition for review because the issue presented is of statewide importance.  *See* ARCAP 23(c).  We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

## II.

### A.

¶5     Arizona courts have long recognized that, "as to new home construction, . . . the builder-vendor impliedly warrants that the construction was done in a workmanlike manner and that the structure is habitable."  *Columbia Western Corp. v. Vela*, 122 Ariz. 28, 33, 592 P.2d 1294, 1299 (App. 1979).  A claim for

4

breach of the implied warranty sounds in contract. *Woodward v. Chirco Constr. Co.*, 141 Ariz. 514, 516, 687 P.2d 1269, 1271 (1984). "[A]s a general rule only the parties and privies to a contract may enforce it." *Treadway v. W. Cotton Oil & Ginning Co.*, 40 Ariz. 125, 138, 10 P.2d 371, 375 (1932). In *Richards*, however, we held that suit on the implied warranty of workmanship and habitability may be brought not only by the original buyer of the home, but also by subsequent buyers. 139 Ariz. at 245, 678 P.2d at 430.

¶6      *Richards* involved claims by homebuyers against a builder-vendor – a company that built and then sold homes to residential purchasers. Reliance, in contrast, only built The Lofts condominiums; the Developer owned the property throughout and sold the residences to members of the Association. The issue before us is whether the absence of privity bars the Association's suit on the implied warranty against Reliance.

**B.**

¶7      The threshold question is whether a builder who is not also the vendor of a new home impliedly warrants that construction has been done in a workmanlike manner and that the home is habitable.[1]

---

[1]      The parties have apparently assumed that the condominium conversion constituted new home construction. We also so assume without deciding the issue.

¶8     Although prior Arizona cases do not directly address this issue, they provide important guidance.  It has long been the rule "that implied warranties as to quality or condition do not apply to realty."  *Voight v. Ott*, 86 Ariz. 128, 132, 341 P.2d 923, 925 (1959).  In *Columbia Western*, the court of appeals recognized this rule, but distinguished *Voight*:

> In our opinion *Voight* is authority for the proposition that no implied warranties arise from the *sale* of realty, but is not dispositive of the issue of implied warranties arising out of the *construction* of new housing which ultimately becomes "realty."

122 Ariz. at 30, 592 P.2d at 1296.

¶9     *Columbia Western* then turned to settled Arizona law holding that "a contractor impliedly warrants that the construction he undertakes which ultimately becomes realty will be performed in a good and workmanlike manner."  *Id*. at 31, 592 P.2d at 1297 (discussing *Kubby v. Crescent Steel*, 105 Ariz. 459, 466 P.2d 753 (1970); *Cameron v. Sisson*, 74 Ariz. 226, 246 P.2d 189 (1952); and *Reliable Electric Co. v. Clinton Campbell Contractor, Inc.*, 10 Ariz. App. 371, 459 P.2d 98 (1969)).  These cases are distinguishable from *Columbia Western*, as they involved agreements directly between the contractors and the plaintiffs for non-residential construction.  Nonetheless, the court of appeals concluded from these cases that Arizona had abandoned the traditional rule of caveat emptor in suits against

6

contractors for defects in construction incorporated into realty. *Id.*

¶10     Based on this understanding, *Columbia Western* held that an implied warranty of good workmanship and habitability was also given in connection with new home construction, noting that

> [b]uilding construction by modern methods is complex and intertwined with governmental codes and regulations. The ordinary home buyer is not in a position, by skill or training, to discover defects lurking in the plumbing, the electrical wiring, the structure itself, all of which is usually covered up and not open for inspection.

*Id.* at 32, 592 P.2d at 1298 (quoting *Tavares v. Horstman*, 542 P.2d 1275, 1279 (Wyo. 1975)).

¶11     The Arizona cases upon which the court of appeals relied in *Columbia Western* did not involve a sale of the underlying property. *See Kubby*, 105 Ariz. at 459-60, 466 P.2d at 753-54 (involving alleged failure properly to build a roof on plaintiff's shed); *Cameron*, 74 Ariz. at 227-28, 246 P.2d at 189-90 (involving allegedly defective well drilled on defendant's property); *Reliable Elec.*, 10 Ariz. App. at 373, 459 P.2d at 100 (involving faulty construction of electrical system in a kiln owned by the plaintiff). Given its careful distinction of *Voight*, *Columbia Western* thus rests on the premise that an

7

implied warranty arises from the *construction* of a new home, whether or not the builder is also a vendor of the home.[2]

¶12     *Richards* is to the same effect.  We stated there that the purpose of the implied warranty "is to protect innocent purchasers and hold builders accountable for their work." *Richards*, 139 Ariz. at 245, 678 P.2d at 430 (quoting *Moxley v. Laramie Builders, Inc.*, 600 P.2d 733, 736 (Wyo. 1979)).  We also reiterated the policy considerations that gave rise to the recognition of the warranty in *Columbia Western*, noting that

> house-building is frequently undertaken on a large scale, that builders hold themselves out as skilled in the profession, that modern construction is complex and regulated by many governmental codes, and that homebuyers are generally not skilled or knowledgeable in construction, plumbing, or electrical requirements and practices.

*Id.*

¶13     Thus, although *Columbia Western* and *Richards* involved builder-vendors, both opinions – and our prior cases – make clear that an implied warranty arises from construction of the home, without regard to the identity of the vendor.  *Moxley*,

---

[2]     All parties to this case have assumed that there is a single implied warranty of workmanship and habitability, as opposed to two separate warranties.  *See Nastri v. Wood Bros. Homes, Inc.*, 142 Ariz. 439, 444, 690 P.2d 158, 163 (App. 1984) (holding that the Arizona decisions establish one implied warranty).  We therefore today make a similar assumption, without deciding the issue.  We also assume arguendo, as have the parties, that suit could properly be brought against the Developer on an implied warranty theory.

8

which we cited with approval in *Richards*, makes this point expressly:

> We can see no difference between a builder or contractor who undertakes construction of a home and a builder-developer. To the buyer of a home the same considerations are present, no matter whether a builder constructs a residence on the land of the owner or whether the builder constructs a habitation on land he is developing and selling the residential structures as part of a package including the land. It is the structure and all its intricate components and related facilities that are the subject matter of the implied warranty. Those who hold themselves out as builders must be just as accountable for the workmanship that goes into a home . . . as are builder-developers.

*Moxley*, 600 P.2d at 735.

¶14    We therefore conclude that Reliance gave an implied warranty of workmanship and habitability, even though it was not also the vendor of the condominiums. We next turn to the issue of whether suit on this warranty can be brought by residential homebuyers, like those in the Association, who had no direct contractual relationship with the builder.

### C.

¶15    The courts below held that *Richards* abrogated the common law requirement of privity in contract actions only when the builder of the new home is also the vendor. We disagree.

¶16    We stressed in *Richards* that, given the policies behind the implied warranty – to protect innocent buyers and hold builders responsible for their work – "any reasoning which

9

would arbitrarily interpose a first buyer as an obstruction to someone equally deserving of recovery is incomprehensible." 139 Ariz. at 245, 678 P.2d at 430 (quoting *Moxley*, 600 P.2d at 736). We also noted that such a rule "might encourage sham first sales to insulate builders from liability." *Id.* And, we emphasized

> that the character of our society is such that people and families are increasingly mobile. Home builders should anticipate that the houses they construct will eventually, and perhaps frequently, change ownership. The effect of latent defects will be just as catastrophic on a subsequent owner as on an original buyer and the builder will be just as unable to justify improper or substandard work.

*Id.*

¶17    Identical concerns guide us today. In today's marketplace, as this case illustrates, there has been some shift from the traditional builder-vendor model to arrangements under which a construction entity builds the homes and a sales entity markets them to the public. In some cases, the builder may be related to the vendor; in other cases, the vendor and the builder may be unrelated. But whatever the commercial utility of such contractual arrangements, they should not affect the homebuyer's ability to enforce the implied warranty against the builder. Innocent buyers of defectively constructed homes should not be denied redress on the implied warranty simply

because of the form of the business deal chosen by the builder and vendor.[3]

**D.**

¶18     Reliance argues that failure to require privity in implied warranty actions will expose residential homebuilders to expanded liability and disrupt an important sector of the Arizona economy.  But homebuilders who do not sell directly to the public already are liable for defective construction.  As noted above, builders have long been directly liable to those with whom they contract for breach of the implied warranty of good workmanship.  Therefore, a developer-vendor sued for defective construction will typically seek indemnity from the builder; such a defendant may also choose to assign his claim against the builder to the plaintiff.  *See Webb v. Gittlen*, 217 Ariz. 363, 364 ¶ 6, 174 P.3d 275, 276 (2008) (noting that unliquidated   non-personal   injury   claims   are   generally

---

[3]     We have no occasion today to decide whether privity is a requirement for enforcement of implied warranties in the context of non-residential construction. *See Hayden Bus. Ctr. Condos. Ass'n v. Pegasus Dev. Corp.*, 209 Ariz. 511, 513 ¶ 14, 105 P.3d 157, 159 (App. 2005) (declining to allow subsequent purchasers of commercial buildings to sue for breach of the implied warranty of good workmanship).  We disapprove *Hayden Business Center*, however, to the extent that it rests on the premise that the *Richards* exception applies only to homebuilders who are also vendors. *Id.* ¶ 12.

assignable). Our decision today thus does not impose liability on builders where none existed in the past.[4]

¶19        Reliance also argues that failure to require privity will chill salutary attempts between developers and builders to allocate responsibility for contract damages arising out of construction defects. But nothing in our opinion today prevents or discourages such agreements; we hold only that the Association may bring suit directly against Reliance. Reliance may not rely upon an agreement it has with the Developer respecting allocation of eventual responsibility for defective construction to escape its obligations to the Association on the implied warranty.[5]

## III.

¶20        For the foregoing reasons, we hold that the superior court erred in dismissing the Association's implied warranty claim for lack of privity. We therefore vacate the opinion of

---

[4]     Arizona law also provides builders with protections against actions by those claiming construction defects. *See* A.R.S. §§ 12-1361 to -1366 (requiring putative plaintiffs to give builders notice and an opportunity to repair defective construction); *id.* § 12-552 (imposing eight-year statute of limitations from substantial completion of the dwelling, regardless of whether defective construction is discovered during that period).

[5]     We recognize that if the developer-vendor is financially unable to satisfy a judgment for breach of the implied warranty, the builder may be left with the entire monetary responsibility, notwithstanding any allocation agreements. But under such circumstances, the costs of remedying defective construction most appropriately fall on the builder, rather than on innocent end users.

12

the court of appeals, reverse the judgment of the superior court, and remand to the superior court for further proceedings consistent with this opinion.[6]

_____
Andrew D. Hurwitz, Justice


CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
W. Scott Bales, Justice

_____

[6]     Both parties seek attorneys' fees pursuant to A.R.S. § 12-341.01(A).   We decline to award fees because the eventual successful party has not yet been determined.