427 P.2d 131

**A. N. S. PROPERTIES, INC., a corporation, Appellant,**

v.

**GOUGH INDUSTRIES, INC., Appellee.**

No. 8005.

Supreme Court of Arizona.

In Division.

May 3, 1967.

Rehearing Denied June 6, 1967.

Forquer & Wolfe, by Sidney B. Wolfe and Allen L. Feinstein, Sp. Counsel, Phoenix, for appellee.

Burton M. Bentley, Anne Kappes, Phoenix, for appellant.

## McFARLAND, Justice:

Gough Industries, Inc., plaintiff-appellee, hereinafter referred to as plaintiff, a judgment creditor of Business Service of America, a corporation, defendant, garnisheed appellant, A.N.S. Properties, Inc., hereinafter referred to as A.N.S. The court entered judgment against the garnishee A.N.S., in the sum of $5,000. From this judgment A.N.S. appeals.

Virginia Williams, individually, Olson Enterprises, Inc., and Business Service of America, a corporation, each owned a number of properties that were in distress. Taxes were past due, mortgage payments were in default, and the improvements were in need of repairs. Whether the properties had any value at all depended upon the ability to attract sufficient capital to enable them to hold on to the properties and improve them and their financial situations, until buyers could be found. To accomplish this, the owners, on December 16, 1959, entered into a loosely drawn agreement with the garnishee A.N.S., which provided that the properties would be conveyed to Lawyers Title to be held in trust; that A.N.S. would supply money to put the properties into saleable condition; that when a property was sold, the former owner would receive 25 per cent of the profit. Virginia Williams held 40 per cent or more of the stock in Business Service of America and in Olson Enterprises, Inc.

Some properties were sold, but whether or not any profit was made on the sales, is not clear.

The original agreement of December 16, 1959, did not clearly set forth the interests of the respective parties—namely, Virginia Williams, individually; Business Service of America, a corporation; and Olson Enterprises, Inc. A letter dated February 10, 1960, sent to A.N.S. and others, signed by Virginia C. Williams, Business Service of America, and Olson Enterprises, Inc., setting forth the properties, the ownership, and the interests of the respective parties, upon which each was to receive his respective share of profits, was introduced in evidence.

On October 28, 1960, A.N.S. offered to pay $5,000. for all of the property that remained in the trust, and this offer was accepted. On January 19, 1961, plaintiff, which claimed an indebtedness against Business Service of America in the amount of

$9,971.21, had a garnishment served upon A.N.S.

It was the contention of plaintiff, as stated during the trial, that the question was not the interest of Business Service of America in the $5,000, but whether plaintiff had a right to the participation interest of Business Service of America in property held by A.N.S.; plaintiff contended that it was not confined to asking for a money judgment against the garnishee-defendant. At the trial counsel for plaintiff stated the position of the plaintiff as follows:

"My contention is that this participation interest of B.S.A. was subject to garnishment as personal property and under the statute, I think that counsel is trying to confine me to asking for a money judgment against them, and that is not what we are doing, because we didn't have the right under the statute."

The court, in order to give a money judgment against defendant-garnishee, had to find that there had been a contract made in the month of October for the sale of the interest in these properties to A.N.S.

This answers the contention of garnishee that there was no existing indebtedness presently and unconditionally owing at the time of the garnishment, and that any claim was uncertain, contingent, and conditional, as it reduces to a definite sum that which was owed at that time.

■ Both written and oral evidence substantiate the agreement in regard to the sale of the properties for the sum of $5,000. We have repeatedly held that where the evidence is in conflict we will not substitute our opinion thereof for that of the trial court, that the evidence will be taken in the strongest manner in favor of the appellee, and that, if there is any reasonable evidence to support the judgment of the lower court, it will be sustained. Kellogg v. Bowen, 85 Ariz. 304, 337 P.2d 628; In Re Estate of Milliman, 101 Ariz. 54, 415 P.2d 877; Hitching Post Lodge, Inc. v. Kerwin, 101 Ariz. 402, 420 P.2d 273.

The question then, is whether there is evidence to substantiate the finding of the court that all of the $5,000 was due Business Service of America at the time of the garnishment. All of the witnesses refer to the agreements of December 16, 1959, and February 10, 1960, as showing the respective properties of each which were turned over to Lawyers Title of Phoenix, to be sold by A.N.S. Lawrence H. Doyle, Jr., testified that he was secretary and treasurer for Business Service of America, and that he participated in the agreement made with A.N.S., regarding the trust which had been set up and under which the properties in question were deeded to Lawyers Title, to be sold by A.N.S. The attorney for plaintiff-appellee objected to the question as to what the agreement reflected and stated as grounds for his objection:

"* * * the interests are shown by the exhibits which are in evidence, * * * the documents are in evidence and speak for themselves."

Later in his testimony, Doyle confirmed that A.N.S. made an offer of $5,000 for the purchase of all the right, title and interest of Virginia Williams, Olson Enterprises, Inc. and Business Service of America in and to the trust, which offer was accepted in October, 1960. He explained that at the time of the acceptance of the offer the parties went over all of the properties held in the trust and determined their respective interests and that the same was reflected in a letter of instructions dated March 1, 1961 to A.N.S. for payment of monies. He then testified as to the amount of money distributed to each of the parties under the letter of instructions, and that under this basis of participating interest, B.S.A. received $901. On cross examination he stated:

"The $5,000 was the actual amount of money that we agreed to take in October of 1960 for the interest of Business Service of America in the property.

"MR. WOLFE: Q. I see. In other words, there was no participation? You

merely sold whatever interest there was for $5,000?

"A. In accordance with the letter."

The answer, "The $5,000 was the actual amount of money that we agreed to take in October of 1960 for the interest of Business Service of America in the property," is the only evidence of any nature to indicate that the interest of B.S.A. was $5,000. It was obviously a slip of the tongue. The previous testimony and later testimony clearly show that the witness was referring not only to the interest of B.S.A. but also to that of the other two parties.

He testified that the participation and sale was "in accordance with the letter." The letter of February 10, 1960 set forth the ownership of the properties of each of the parties which had been placed in the trust and which was the basis of the division. Doyle explained the basis of determining the value of the property which established the participating interest of each in the $5,000:

"A. The basis of the participating—in accordance with the participating interest, B.S.A. was to participate in the profits from any sale of the property that they were concerned with and that they owned, and that each one would go in at the actual amount of outstanding indebtedness which would be the fair value of the property."

That the $5,000 was for the interest of all three was understood by counsel, for he asked the question, "And that was an amount that you and Mrs. Williams, or whoever it was, decided to accept?" Mrs. Williams had the largest interest in the property, according to the division that had been made.

■ In a garnishment proceeding an unsecured creditor of a defendant cannot recover more than the defendant himself could recover against the garnishee in a direct action. In Sandia Development Corporation v. Allen, 86 Ariz. 40, 340 P.2d 193, we held:

"In order to determine the correctness of this contention, the court must examine the several legal theories upon which the plaintiff's tender of issue, as amended, was based. In this consideration, it must be remembered that the plaintiff, being only an unsecured creditor of the defendants, can, at the most, recover no more than the defendants themselves could recover against the garnishee in a direct action."

■ Where the garnishee denies any liability, the principal defendant has the burden of proof to show a garnishable debt, or funds, as well as the amount of garnishee's indebtedness to defendant. 6 Am.Jur.2d, Attachment and Garnishment, § 383, p. 828. Plaintiff-appellee introduced the original contract which showed that the property placed in trust with Lawyers Title of Phoenix belonged to Virginia Williams, individually, Business Service of America, and Olson Enterprises, Inc., and the basis upon which the profits from the sales were to have been divided. It is bound by that evidence.

Therefore, the only amount for which plaintiff-appellees could obtain judgment was for the interest of Business Service of America in this $5,000. The amount of the distribution to B.S.A. was $901. Doyle testified that this sum, which was based on the amount of property held in trust, was Business Service of America's proportionate share of the profits. Accordingly we find only $901. of the $5,000. was due Business Service of America, a corporation, when the garnishment was served, and the judgment herein is reduced to that amount. It was paid to B.S.A. after the garnishment was served. A.N.S. Properties, Inc., is therefore liable for this amount of money. The judgment is therefore modified and reduced to the sum of $901.

Judgment affirmed as modified.

STRUCKMEYER and LOCKWOOD, JJ., concur.