466 P.2d 753

**David KUBBY, doing business as National Auto Parts, Appellant,**

v.

**CRESCENT STEEL, an Arizona corporation, Appellee.**

No. 9826.

Supreme Court of Arizona,
In Division.

March 27, 1970.

John M. Levy and Noel Levy, Phoenix, for appellant.

Jestila & Holroyd, by Donald D. Holroyd, Phoenix, for appellee.

UDALL, Justice.

This is an appeal from a judgment of the Superior Court, Maricopa County, in favor of appellee in the amount of $2,142.00 on appellee's contract to construct a car storage shed for appellant.

The contract was entered into on November 19, 1963 and called for the appellee (hereinafter referred to as Crescent) to construct the metal roof of the shed for appellant (hereinafter referred to as Kubby) in accordance with plans and specifications provided by Kubby. The shed, open on three sides, consisted essentially of a masonry wall and the metal roof. The

masonry wall was to be built by others than Crescent. The contract between the parties herein provided that the job was to be performed "in a workmanlike manner according to standard practices."

Following completion of the work Kubby refused to pay Crescent. Kubby's position was that Crescent had not performed the job in a workmanlike manner because water leaked into the shed between the roof and the masonry wall. Crescent then instituted this action for the contract price of $2,-142.00, and Kubby counterclaimed for alleged water damage to parts and equipment stored under the shed.

A two-day trial was held in Superior Court sitting without a jury. Judgment was entered in favor of Crescent and Kubby appeals.

The record shows that there was leakage into the shed caused by gaps between the metal roof, constructed by Crescent, and the masonry wall, constructed by a third party. It is Kubby's principle contention here that Crescent's failure to fill the gaps by means of flashing or caulking was a breach of its warranty of good workmanship.

As Crescent correctly asserts, the plans and specifications were furnished by Kubby, and they did not clearly call for caulking or flashing. There is testimony in the record that the drawings showed a line between the roof and the wall, and that the line might be interpreted as representing flashing. However, its meaning is not clear. Kubby here argues that even though the plans did not specifically call for flashing, completion of the roof without flashing was not completion in a workmanlike manner.

A contractor who undertakes to perform a contract in accordance with plans and specifications furnished by the contractee is not liable for damages due to defects in the plans, but he must perform the work in a workmanlike manner and without negligence. Home Furniture Inc. v. Brunzell Construction Co., 440 P.2d 398 (Nev.1968); Teufel v. Wienir, 68

Wash.2d 31, 411 P.2d 151 (1966); See Annot., 6 A.L.R.3d 1394 (1966). A contractor impliedly warrants that he will perform in a workmanlike manner even though the contract itself does not contain an express warranty of good workmanship. Reliable Electric Co. v. Clinton Campbell Contractor, Inc., 10 Ariz.App. 371, 459 P.2d 98 (1969).

The central issue here is whether standards of good workmanship required Crescent to insure that water did not leak between the edge of the roof and the masonry wall. The trial court resolved this issue in favor of Crescent. We must view the evidence in the light most favorable to support the judgment. A. N. S. Properties, Inc. v. Gough Industries, Inc., 102 Ariz. 180, 427 P.2d 131 (1967); Kellogg v. Bowen, 85 Ariz. 304, 337 P.2d 628 (1959).

The evidence shows that leakage could have been prevented by flashing, and further that flashing is normally used in construction. However, the record in this case does not contain sufficient evidence to require reversing the judgment of the trial court and to hold that Crescent was required to install flashing. We must consider that this particular structure was not a weatherproof structure but was merely a shed open on three sides. As indicated earlier, the specifications furnished by Kubby could have provided for flashing or caulking but did not do so. In addition, Crescent was not responsible for building the entire shed but only for constructing the metal roof. Thus the record here simply does not affirmatively show that standards of good workmanship placed responsibility for the absence of flashing on Crescent rather than upon the masonry contractor or on Kubby himself, who furnished the specifications.

The testimony upon which Kubby relies is that of a building inspector for the city of Phoenix. He testified that it was his understanding that in Arizona the roofer often installs the flashing. However, he also testified that in his own experience flashing was installed when the masonry was installed. He then stated that

the flashing requirement was generally set forth in the roofer's contract and that the roofer had the masonry contractor install the flashing. We do not consider that this ambiguous testimony supports Kubby's position that standards of good workmanship required Crescent to install flashing, in the absence of an express contractual provision.

 Kubby also argues that Crescent is liable for damage caused by leakage for the reason that Crescent substituted a different type of roofing substance for that called for in the specifications.[1] Kubby asserts that this departure from the specifications was a breach of the provision of the contract requiring all agreements to be in writing and also providing that changes increasing the cost of the contract were to be approved in writing by Kubby.

Even assuming that the substitution was contrary to the terms of the contract, we do not consider that the substitution is material to the issue presented here. Kubby does not point to any evidence in the record showing that the leakage was caused by the type of roofing used. Rather, Kubby's position here is that the leaking was caused by alleged improper attachment of the roof to the wall.

In addition, the substitution was accomplished at no extra cost to Kubby. Accordingly, the substitution was not a breach of the contract provision requiring written approval for changes increasing the contract price. Moreover, there is no indication that Kubby made a timely protest of the substitution.

In view of our holding that the trial court, on the basis of the evidence before it, properly awarded judgment in favor of Crescent for the contract price and against Kubby on his counterclaim, it is

not necessary to consider Kubby's additional contention that the trial court erred in refusing to allow Kubby to amend his pleadings to conform to evidence reflecting the cost of roof repair.

Judgment affirmed.

LOCKWOOD, C. J., and HAYS, J., concur.

---

1. There were in fact two substitutions of roofing material. Crescent originally constructed the roof with material other than that designated in the plans, its explanation being that the designated material did not exist. In any event, a second substitution was made in order to meet the requirements of city inspection. The changes did not result in any additional expense to Kubby. There is no substantial evidence in the record indicating in what way, if any, the substance ultimately used materially differed from that indicated on the plans. We are unable to accept Kubby's assertion that the substitutions indicated bad faith on Crescent's part.