NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

GORDANA MIKALACKI, *Petitioner/Appellee,*

*v.*

DRAGAN JOHN RUBEZIC, *Respondent/Appellant.*

No. 1 CA-CV 21-0483 FC
FILED 10-18-2022

Appeal from the Superior Court in Maricopa County
No. FC2019-005762
The Honorable Max Covil, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Dragan John Rubezic, Phoenix
*Respondent/Appellant*

Schmillen Law Firm, Scottsdale
By James Schmillen
*Counsel for Petitioner/Appellee*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

¶1　　　　Dragan Rubezic (Husband) appeals from the decree dissolving his marriage to Gordana Mikalacki (Wife). He challenges the superior court's rulings imposing a disclosure-violation sanction; ordering legal decision-making authority, spousal maintenance, and child support; dividing certain assets; and awarding attorney's fees to Wife. Husband also contests, on procedural grounds, two of the superior court's post-decree rulings. For the following reasons, we affirm the dissolution decree and vacate the challenged post-decree rulings.

**BACKGROUND**

¶2　　　　After six years of marriage, Wife petitioned for dissolution. Apart from their marital relationship and shared parental duties to their two minor children (the children), Wife and Husband were business partners – the sole members of the Rubezic Law Group (the firm) and co-owners of an office building (the commercial building). The superior court held a two-day trial on contested issues and entered a decree of dissolution.

¶3　　　　In the decree, and specific to this appeal, the superior court: (1) awarded Wife and Husband joint legal decision-making authority over the children, with Wife having final decision-making authority over medical decisions; (2) awarded Wife and Husband equal parenting time; (3) awarded Wife monthly child support of $762 and arrearages ($29,070.88); (4) awarded Wife monthly spousal maintenance of $2,000 for 18 months; (5) ordered the sale of the marital residence and an equal division of the property's equity; (6) awarded Wife the commercial building as her sole and separate property, ordered her to refinance all associated debt solely in her name, and ordered her to pay Husband one-half of the commercial building's equity; (7) allocated the parties' various bank accounts; (8) awarded Husband the firm as his sole and separate property and ordered him to pay Wife one-half of the firm's equity; (9) allocated the parties' outstanding debts (credit card balances, medical/dental bills, personal

loans, and student loans); and (10) awarded Wife her reasonable attorney's fees and costs. Husband timely appealed.

## DISCUSSION

### I.  Imposition of Disclosure-Violation Sanction

¶4          Husband challenges the superior court's pretrial ruling precluding him from presenting evidence of a purported community loan at trial. According to Husband, the governing procedural rule barred the superior court from imposing a sanction that exceeded Wife's requested relief.

¶5          During a status conference hearing held approximately 11 months into the dissolution proceedings, Wife's attorney outlined Husband's refusal to comply with repeated discovery requests for financial information, including, as relevant here, his failure to produce documentation regarding a loan that his parents purportedly extended to the parties "for some home renovations." When questioned about the purported loan, Husband's attorney told the court that Husband had complied with the disclosure requirements because no promissory note existed (rather than *deny* the existence of a promissory note, counsel expressed *uncertainty* concerning its existence). At the close of the hearing, the superior court instructed Wife to file a motion to compel regarding the parties' discovery disputes *other than* those relating to the alleged home-renovation loan. Specific to that dispute, the superior court instructed Wife to either file a motion in limine or include an objection in her pretrial statement if Husband failed to produce documentation of the purported loan before trial.

¶6          Two weeks later, Wife moved to compel disclosure, addressing the parties' discovery disputes *other than* those relating to the purported home-renovation loan, specifically noting the superior court had advised her that moving in limine "was the proper vehicle" for resolving *that* discovery issue. But in her reply in support of the motion to compel, Wife reasserted that Husband had failed to provide any documentation to substantiate his claim that a home-renovation loan "exist[ed]," noting that such documentation, if it existed, "was in the sole care and control of Husband."

¶7          After briefing, the superior court granted Wife's motion to compel, finding Husband had no reasonable basis for failing to comply with the disclosure requests and "simply ignored them." Specific to the "purported home improvement loan," the superior court found that

3

Husband "offered no credible reason for why he did not timely respond, produce at least some of the requested information and documents, or timely object to the requests." On that basis, the court precluded Husband "from introducing evidence at trial to support a claim that the community owe[d] a debt to [his] parents."

**¶8**  We review a superior court's sanction for disclosure and discovery violations for a clear abuse of discretion. *Seidman v. Seidman*, 222 Ariz. 408, 411, ¶ 18 (App. 2009). "A [superior] court abuses its discretion when it exercises discretion in a manner that is either 'manifestly unreasonable' or based on untenable grounds or reasons." *Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 42, ¶ 11 (App. 2008) (citation omitted).

**¶9**  Citing Arizona Rule of Family Law Procedure (Rule) 35(a)(2), Husband argues the superior court exceeded its authority by imposing a sanction that Wife did not expressly seek. Rule 35 governs motion practice generally and requires that motions "state with particularity the grounds for granting the motion and the relief or order sought." Ariz. R. Fam. Law P. 35(a)(2). But the superior court imposed the sanction under Rule 65(b)(1)(B), which specifically governs discovery and disclosure violations and authorizes a court to enter sanctions against a person who has failed "to comply with a disclosure or discovery rule," including "prohibiting the disobedient party from supporting or opposing designated arguments, or from introducing designated matters in evidence." Ariz. R. Fam. Law P. 65(b)(1)(B).

**¶10**  We interpret procedural rules de novo, "apply[ing] fundamental principles of statutory construction, the cornerstone of which is the rule that the best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction." *State ex rel. Adel v. Covil*, 252 Ariz. 40, 41, ¶ 2 (App. 2021) (internal quotation omitted). "When a specific rule conflicts with a general one, the specific rule controls." *Cosper v. Rea*, 228 Ariz. 555, 557, ¶ 10 (2012).

**¶11**  As noted, Rule 35 governs motion practice generally whereas Rule 65 specifically governs discovery and disclosure violations. Accordingly, to the extent there is any arguable conflict between the rules, Rule 65 controls.

**¶12**  By its plain language, Rule 65(b) authorizes a superior court to address a discovery or disclosure rule violation and impose a sanction on a non-complying party. Rather than narrowly constraining the authority

to sanction, Rule 65(b) extends broad power to the court to redress disclosure violations, including, but "not limited to," barring a disobedient party from introducing undisclosed evidence at trial. While the better practice may be for a party to request a sanction specifically, Rule 65(b) does not limit the permissible sanctions to those expressly requested by a party.

**¶13** Applying Rule 65(b) here, the superior court did not abuse its discretion by precluding evidence of the purported home-renovation loan as a sanction for Husband's failure to timely comply with his disclosure obligations. Being in the best position to observe and assess the parties' conduct, the superior court found that Husband had engaged in a pattern of willful discovery delay and noncompliance.[1] *See MacMillan v. Schwartz*, 226 Ariz. 584, 592, ¶ 38 (App. 2011).

## II.     Order of Legal Decision-Making Authority

**¶14** Husband challenges the superior court's order regarding legal decision-making, which granted the parties joint legal decision-making authority but gave Wife final decision-making authority in the event the parties could not agree on medical care decisions for the children. He asserts the superior court predicated its ruling on incorrect facts.

**¶15** We review legal decision-making determinations for an abuse of discretion. *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019); *see also Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11 (App. 2013); *Porter v. Porter*, 21 Ariz. App. 300, 302 (1974) (explaining the superior court has "broad discretion in determining what will be the most beneficial for the children" and "is in the best position to determine what is in the children's interest" (citations omitted)). "An abuse of discretion exists when the record, viewed in the light most favorable to upholding the [superior] court's decision, is devoid of competent evidence to support the decision" or the court has committed an error of law "in the process of reaching [a] discretionary conclusion." *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009) (internal quotations and citations omitted).

---

[1]     In his reply brief, Husband argues for the first time on appeal that evidence regarding the purported home-renovation loan either was already in Wife's possession or "was information she could have reasonably obtained from other sources." Because Husband failed to raise this claim in his opening brief, we do not address it. *In re Marriage of Pownall*, 197 Ariz. 577, 583, ¶ 25 n.5 (App. 2000) (holding issues raised for the first time in a reply brief are waived).

**¶16** Legal decision-making is the "right and responsibility to make all nonemergency legal decisions for a child including those regarding education, health care, religious training and personal care." A.R.S. § 25-401(3). In evaluating legal decision-making, the superior court must determine the best interests of the child by considering "all factors that are relevant to the child's physical and emotional well-being, including:

> (1) The past, present and potential future relationship between the parent and the child.
>
> . . . .
>
> (5) The mental and physical health of all individuals involved.
>
> (6) Which parent is more likely to allow the child frequent, meaningful and continuing contact with the other parent[.]
>
> (7) Whether one parent intentionally misled the court to cause an unnecessary delay[.]
>
> (8) Whether there has been domestic violence[.]

A.R.S. § 25-403(A).

**¶17** In her pretrial statement, Wife asserted that an order of joint legal decision-making authority was contrary to the children's best interests. In support of this contention, Wife explained that the parties' daughter has been diagnosed with a serious, chronic disease requiring considerable care, treatment, and monitoring and maintained that because she served as the children's primary caregiver, she was best positioned to attend to the daughter's ongoing medical needs. Wife also alleged that Husband exposed the children to violence and that his abuse of prescription drugs created an unstable environment for them.

**¶18** Within its detailed findings, the superior court addressed each factor under A.R.S. § 25-403(A). The court also discussed A.R.S. §§ 25-403.03(D) and -403.04(A), which establish rebuttable presumptions that the award of sole or joint legal decision-making to a parent who has committed domestic violence or engaged in substance abuse is contrary to a child's best interests. Husband raises several challenges to the superior court's findings. We address each in turn.

¶19 First, Husband contests the superior court's finding that he tested negative for all substances "except for THC." Consistent with his challenge, the record reflects that Husband tested negative for *all* substances, including THC. Although the superior court incorrectly recounted Husband's test results, we conclude that this erroneous finding did not materially affect the best interests calculus because the court also found: (1) Wife's testimony that Husband abused substances not credible, (2) the drug test results demonstrated that Husband was not "abusing drugs," and (3) Husband rebutted the A.R.S. § 25-403.04 presumption that drug abuse rendered joint legal decision-making contrary to the children's best interests.

¶20 Next, Husband disputes the superior court's finding that he "has taken classes for anger management." Consistent with his challenge, nothing in the record suggests that Husband has participated in anger management classes. In fact, Husband correctly points to a counseling assessment report that concluded he was not "in need of anger management." Regardless, the record supports the superior court's finding that *both* Husband and Wife have difficulty managing anger. Accepting Wife's testimony, the superior court found that Husband engaged in acts of violence, including domestic violence against Wife and a "road rage" incident involving a neighbor.[2] Contrary to Husband's contention, the court also specifically addressed, and gave credence to, Husband's allegation that Wife pulled their daughter's hair. Given its finding that both Husband and Wife demonstrated difficulty managing anger, we conclude the superior court's errant finding that Husband participated in an anger management class was not a factual predicate for its best-interests determination.[3]

¶21 Husband also challenges the superior court's use of his disclosure delays as a basis for giving Wife final legal decision-making authority over medical issues, asserting that his noncompliance was irrelevant to the best-interests determination because his disclosure

---

[2] In his reply brief, Husband argues for the first time on appeal that the superior court "committed legal and factual error when it found" he had committed an act of domestic violence against Wife. Because Husband failed to raise this claim in his opening brief, we do not address it. *In re Marriage of Pownall*, 197 Ariz. at 583, ¶ 25 n.5.

[3] Notwithstanding Husband's challenge, we note that the successful completion of an anger management class is an enumerated statutory basis for rebutting the A.R.S. § 25-403.03(D) presumption. *See* A.R.S. § 25-403.03(E).

violations pertained to financial information only, not child-care matters. While Husband correctly characterizes the subject matter of his disclosure violations, A.R.S. § 25-403(A) does not limit the relevance of unnecessary delays to only those involving child-care issues. In this case, the superior court could reasonably conclude that Husband's refusal to cooperate in discovery matters might spill over into other aspects of the parties' relationship, negatively affecting their ability to obtain timely medical care for their children.

¶22 Finally, Husband argues that Wife's role as the children's primary caregiver "*prior* to the dissolution" did not provide a reasonable basis for awarding her final legal decision-making authority over medical decisions because he has been present "*since* the dissolution." (Emphasis added.) In making this argument, Husband does not meaningfully contest the superior court's finding that Wife "has been more present to address the [c]hildren's medical needs," and we reject his assertion that a court may not consider a parent's involvement in the care and treatment of his children's health before dissolution, or lack thereof, as part of its best-interests determination.

¶23 In sum, the record reflects that the superior court carefully considered the relevant statutory factors and weighed the parties' conflicting testimony. Although the court erroneously found that Husband participated in an anger management class and tested positive for THC, we conclude such error was harmless, and the record supports its ultimate finding that joint legal decision-making authority, with Wife having final legal decision-making authority over medical decisions, is in the children's best interests.

## III. Calculation of Wife's Income

¶24 Husband disputes the superior court's calculation of Wife's monthly income ($6,000), arguing the court failed to attribute *all* of Wife's income per the Arizona Child Support Guidelines. Because the superior court's spousal maintenance and child support determinations were predicated partly on this allegedly incorrect income figure, Husband challenges both orders.

¶25 In support of his contention, Husband points to Wife's 2019 tax return. He argues it demonstrates that "[Wife]'s actual [monthly] income is $9,767," but his explanation of how to calculate this new figure is speculative. According to Husband, it is "unclear how" Wife's newly formed legal practice "operated at a loss," and in the absence of clear

evidence, Husband assumes this "[m]ost likely" occurred because Wife paid herself a salary exceeding the business' revenue.

**¶26**         We need not consider Husband's proffered calculation, however, because he failed to present it at trial and instead urged the superior court to impute a monthly income of $6,000 to Wife. Having done so, Husband cannot now claim the superior court erred by adopting the figure that *he* advanced. *See State v. Logan*, 200 Ariz. 564, 565-66, ¶ 9 (2001) (explaining a reviewing court "will not find reversible error when the party complaining of it invited the error").

### IV.     Duration of Spousal Maintenance

**¶27**         Husband challenges the duration of Wife's spousal maintenance award. Pointing to the superior court's reasoning, that Wife needed spousal maintenance only until her newly formed law firm became "self-sufficient," Husband argues the court incorrectly awarded Wife maintenance for a substantially longer period than necessary.

**¶28**         "Arizona law extends the [superior] court substantial discretion to set the amount and duration of spousal maintenance." *Rainwater v. Rainwater*, 177 Ariz. 500, 502 (App. 1993). "The framework for that discretion" is governed by A.R.S. § 25-319, which requires the court, in deciding the duration of maintenance, to balance certain, enumerated factors. *Id.*; *see also* A.R.S. § 25-319(B) (2018) (stating a spousal maintenance award "shall be in an amount and for a period of time as the court deems just"). "To strike the proper balance, the [superior] court need not apply every [statutory] factor[.]" *Rainwater*, 177 Ariz. at 502. Rather, the court must conduct a "case-by-case inquiry" to determine which factors are applicable. *Id*. In this case, the relevant factors include:

1.  The standard of living established during the marriage.

    . . . .

3.  The age, employment history, earning ability and physical and emotional condition of the spouse seeking maintenance.

4.  The ability of the spouse from whom maintenance is sought to meet that spouse's needs while meeting those of the spouse seeking maintenance.

5.  The comparative financial resources of the spouses, including their comparative earning abilities in the labor market.

. . . .

9. The financial resources of the party seeking maintenance, including marital property apportioned to that spouse, and that spouse's ability to meet that spouse's own needs independently.

10. The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment[.]

A.R.S. § 25-319(B).

**¶29**        Applying these factors to this case, the superior court found: (1) the parties enjoyed a high standard of living during their marriage; (2) Wife "has the ability to earn"; (3) Husband retained control of the firm while Wife "started her own firm"; (4) "[Wife] needs assistance for a brief period to ensure the success of her [f]irm"; and (5) a spousal maintenance award to allow Wife time to grow the new firm "is appropriate." Based on these findings, the superior court ordered Husband to pay Wife $2,000 monthly for 18 months.

**¶30**        It is undisputed that Wife incorporated her firm in September 2019. Because 18 months elapsed between the date of incorporation and the date the superior court issued the dissolution decree (March 2021), Husband argues that the court's award of spousal maintenance to Wife for an additional 18 months was excessive.

**¶31**        At trial, the superior court probed Wife about the length of time necessary to develop goodwill and establish a client base for her new firm. Wife testified that she needed two years to establish the firm as a stable and reliable source of income. Noting that Wife's firm "ha[d] already been in existence" for approximately 16 months by the trial, the court questioned whether an award of 24 *additional* months was necessary. In response, Wife explained that her ability to grow the firm had been severely hampered by both the pandemic and her need to attend to the parties' ill child, who had a significant medical episode during those 16 months. On this record, and given the superior court's firsthand opportunity to observe the parties and assess their credibility, we conclude the court did not abuse its discretion by fashioning a spousal maintenance award of 18 months' duration. *See MacMillan*, 226 Ariz. at 592, ¶ 38.

## V.     Division of the Firm

¶32     Husband contests the superior court's valuation of the firm, arguing the court improperly accepted the value calculation offered by Wife's expert witness, Brendan Kennedy. Husband also contends that the superior court failed to make sufficient findings establishing the factual predicate for its valuation ruling, despite Wife's pretrial request for specific findings of fact.

¶33     "The valuation of assets is a factual determination that must be based on the facts and circumstances of each case." *Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996). We review a superior court's valuation of a business as part of a divorce proceeding for an abuse of discretion, *Schickner v. Schickner*, 237 Ariz. 194, 197, ¶ 13 (App. 2015), and view the evidence in the light most favorable to upholding the court's decision, *see In re Marriage of Molloy*, 181 Ariz. 146, 152 (App. 1994). In determining fair market value, the superior court may rely on a testifying expert's opinion, and challenges to the expert's methodology generally "go[] to the weight of the expert's opinion, not the admissibility." *Kelsey*, 186 Ariz. at 51. Because the superior court is in the best position to assess and resolve conflicting evidence, we accept its factual findings absent clear error. *Id.*; *A.N.S. Props., Inc. v. Gough Indus., Inc.*, 102 Ariz. 180, 182 (1967) (explaining "we will not substitute our opinion thereof for that of the [superior] court" if there is any "reasonable evidence" to support the superior court's findings).

¶34     At trial, Kennedy testified that he calculated the firm's value as of June 7, 2019, using various approaches (asset, income, and market). He explained that he based his calculation on the financial information Wife provided and his independent analysis of comparable businesses, opining that the firm's value was $269,000. Husband's counsel thoroughly questioned Kennedy's methods and conclusions on cross-examination but did not present any competing expert opinion testimony concerning the firm's value. During *his* testimony, however, Husband opined that the firm had a value of only $161,000 because Wife left the firm after June 7, 2019, and took several clients with her.

¶35     In the dissolution decree, the superior court adopted Kennedy's valuation of the firm - $269,000. The court specifically found Husband's testimony challenging Kennedy's valuation not credible.

¶36     On appeal, Husband does not dispute Kennedy's qualifications as an expert witness concerning business valuations. Nor does he otherwise contend that the superior court improperly admitted

11

Kennedy's valuation report or testimony. Instead, Husband alleges various deficiencies with Kennedy's opinion and maintains that the superior court should have discounted Kennedy's valuation.

**¶37** First, Husband argues that Kennedy's expert opinion evidence was deficient because he performed a calculation of value report rather than an opinion of value report. While "a 'calculation of value' opinion may be short of the gold standard, it is not *per se* unacceptable." *Larchick v. Pollock*, 252 Ariz. 364, 368, ¶ 18 (App. 2021) (citation omitted). In other words, a fact-finder need not discount an expert's opinion solely because the expert "did not consider every single process and procedure that would be included" had he conducted a fuller valuation. *Id.* In this case, counsel had an unhindered opportunity to question Kennedy regarding his methodologies and conclusions, and Husband had ample opportunity to provide the basis for his valuation. *Id.* at ¶ 17 (noting that expert opinion testimony based on a calculation of value methodology may be "vulnerable to effective cross-examination" and the trier of fact is "free to give the expert's opinion little or no weight"). Deciding which conflicting methodology and valuation to rely on was within the superior court's discretion. *See Mitchell v. Mitchell*, 152 Ariz. 317, 323 (1987). Accordingly, the superior court did not abuse its discretion by relying on a calculation of value supported by expert testimony and based on an acceptable valuation method.

**¶38** Second, Husband argues that Kennedy's opinion testimony was unreliable because he considered only the financial information provided by Wife. Notably, Husband refused to timely disclose financial information as required by the governing procedural rules. Had Husband timely complied, Kennedy could have considered his disclosures. It is unavailing that he now complains that Wife's expert did not consider information he refused to produce.

**¶39** Third, Husband challenges Kennedy's use of a June 7, 2019 valuation date. "[I]n a dissolution proceeding the superior court has wide discretion to choose a business's valuation date, so long as the ultimate valuation is equitable." *Meister v. Meister*, 252 Ariz. 391, 397, ¶ 18 (App. 2021). The selection of a valuation date should be based on "pragmatic considerations" and the "principles of fairness and equity." *Id.* at ¶ 17. While the court "may use the date of service [of a petition for dissolution], or a date near the date of service, as a starting point in choosing the valuation date[,] . . . . the court must select a different date *when necessary* to ensure an equitable result." *Id.* at ¶ 18 (emphasis added). Here, Kennedy used the date Wife petitioned for a dissolution of marriage as the valuation

date. Although Husband argues that Kennedy's calculation of value failed to account for Wife's subsequent departure from the firm and Husband's renaming and relocating of the firm, even accepting his representations, Wife took only 16% and Husband retained 84% of the firm's clients. Moreover, Husband does not meaningfully contest Kennedy's expert opinion testimony that a firm's goodwill, reputation, and overall acceptance in the legal community – here, all associated with Husband's last name – has considerable value. *Cf. id.* at ¶ 19 (concluding the selected valuation date (near the date of service) for the marital business led to an inequitable valuation because the marital business sustained a substantial loss shortly after the valuation date, and the loss was caused by a spouse's conduct and alleged mismanagement of the business during the marriage – *before* the date of service).

**¶40** Finally, Husband argues that Kennedy failed to adequately explain various adjustments noted in his valuation report. But the record reflects that Husband had an unimpeded opportunity to vigorously cross-examine Kennedy regarding his methodologies and conclusions, including any adjustments he found questionable. *See Larchick*, 252 Ariz. at 368, ¶ 15 (explaining cross-examination and the presentation of contrary evidence "are the traditional and appropriate means of attacking *shaky but admissible evidence*" (quotation and citation omitted)).

**¶41** Because Kennedy's expert opinion testimony and report provided a reasonable basis for calculating the value of the firm and Husband had a full opportunity to challenge Kennedy's opinion at trial, we find no abuse of discretion in the superior court's valuation ruling. Though succinct, we further conclude that the superior court's findings concerning valuation were sufficient. The court specifically adopted Kennedy's calculation of value and found Husband's contradictory testimony regarding valuation not credible. *Cf. Dumes v. Harold Laz Advert. Co.*, 2 Ariz. App. 387, 388 (1965) (observing that an interested party's uncorroborated testimony "may be rejected").

## VI. Allocation of the Commercial Building

**¶42** Husband challenges the superior court's allocation of the commercial building and the associated rental bank account. He argues the court inequitably divided these assets.

**¶43** We review a superior court's apportionment of property for an abuse of discretion. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007). As part of a dissolution proceeding, the court must "divide the

community, joint tenancy and other property held in common equitably, though not necessarily in kind." A.R.S. § 25-318(A).

¶44        First, Husband questions the propriety of the superior court's allocation of the commercial building to Wife, asserting the dissolution decree "is devoid of any explanation as to why" the court apportioned the property in that manner and suggesting that he could manage the property more profitably than Wife. By failing to cite relevant supporting authority or develop the argument further, Husband waived any claim that the superior court abused its discretion by allocating the commercial building to Wife. *See Polanco v. Indus. Comm'n of Ariz.*, 214 Ariz. 489, 491, ¶ 6 n.2 (App. 2007) (an appellant's failure to develop and support an argument waives the issue on appeal).

¶45        Next, Husband points to the superior court's ruling requiring Wife to refinance the loan on the commercial building and pay him one-half of the equity, arguing the court failed to make the specific findings necessary to effectuate that ruling - that is - the court failed to adopt either parties' valuation of the commercial building or provide its calculation. Although Husband and Wife submitted competing appraisals of the commercial building, $970,000 and $920,000, respectively, at trial, Wife testified that the parties "agree[d] that the Court should use a midpoint between the two valuations of approximately [$]935,000." Importantly, Husband neither objected to Wife's testimony nor offered any contravening testimony. While the better practice is for the superior court to detail any stipulations that serve as the factual predicate for its rulings within a dissolution decree, here, the record makes clear that the equity in the commercial building must be determined based on an undisputed valuation of $935,000.

¶46        Husband also contends that the superior court failed to divide the rental income from the commercial building equitably. To the extent Husband argues that he is entitled to one-half of the rents Wife received from the commercial building during the pendency of the divorce litigation, the record reflects that the superior court imputed the rents to Wife as income for purposes of calculating spousal maintenance and child support. Having imputed those monies as income to Wife, thereby minimizing Husband's maintenance and support obligations, it would have been inequitable for the court to also attribute those monies to Wife as part of her share of the commercial building.

**¶47**      In sum, we find no merit in Husband's various challenges to the superior court's allocation of the commercial building and rental bank account and conclude the court acted well within its discretion.

## VII.   Award of Attorney's Fees to Wife

**¶48**      Husband challenges the superior court's post-decree award of $72,992.70 in attorney's fees to Wife. Pointing to two interim attorney's fees awards granted to Wife *before* trial, Husband argues the final award to Wife, purportedly encompassing *all* attorney's fees she incurred throughout the litigation, was improper.

**¶49**      As part of the dissolution decree, the superior court awarded Wife her reasonable attorney's fees under A.R.S. § 25-324(A), which authorizes an award of attorney's fees after considering both parties' financial resources and the reasonableness of their positions throughout the proceedings. While the court found "no substantial disparity of financial resources between the parties," it determined that Husband had "acted unreasonably in the litigation," specifically noting his failure to comply with his discovery and disclosure obligations.

**¶50**      We review a superior court's ruling on an attorney's fees request under A.R.S. § 25-324 for an abuse of discretion. *Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 6 (App. 2014). We will uphold an attorney's fees award "if there is any reasonable basis for it." *In re Marriage of Gibbs*, 227 Ariz. 403, 410, ¶ 20 (App. 2011) (quotation omitted).

**¶51**      In its ruling on temporary orders, the superior court granted Wife's request for an interim attorney's fees award of $5,000.00. Later, the court also ordered Husband to pay Wife an additional $4,246.00 in attorney's fees after granting her motion to compel production. Husband asserts that Wife included the attorney's fees already awarded her in her final application for attorney's fees – resulting in an award of duplicative attorney's fees. Because the superior court already ordered him to pay Wife's attorney's fees relating to the motion to compel, Husband also argues that any additional award of attorney's fees predicated on his noncompliance with the discovery and disclosure rules should have been limited to the only other discovery dispute – a motion in limine. In other words, Husband argues that his pattern of noncompliance with the disclosure rules did not justify an overarching award of all attorney's fees incurred by Wife throughout the litigation.

**¶52**      We find no merit in Husband's contentions. In her final application for attorney's fees, Wife expressly subtracted her two prior

15

attorney's fees awards, and Husband has failed to identify a single duplicative billing entry. Nor has he cited any authority to support his contention that the superior court's discretion was limited to awarding only the portion of attorney's fees about discovery disputes. The record supports the superior court's finding that Husband acted unreasonably, and we conclude the court did not abuse its discretion by awarding Wife $72,992.70 in attorney's fees.

## VIII.   Imposition of a Conditional Lien

¶53        Husband asserts that the superior court inequitably divided the marital home and the commercial building. Specifically, he argues that the court unfairly apportioned these assets to "punish" him for "misconduct."

¶54        Recognizing that the superior court has substantial discretion to determine "what is equitable in each case," *Toth v. Toth*, 190 Ariz. 218, 221 (1997), we will uphold its division of community property absent a clear abuse of discretion, *Miller v. Miller*, 140 Ariz. 520, 522-23 (App. 1984). In reviewing the superior court's apportionment of assets, we consider the evidence in the light most favorable to upholding the court's ruling. *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007). We construe statutes, however, de novo. *Murray v. Murray*, 239 Ariz. 174, 176, ¶ 5 (App. 2016).

¶55        In the final section of the dissolution decree, the superior court addressed various additional orders and granted Wife's pretrial petition for contempt for Husband's non-payment of child support, child support arrears, spousal maintenance, attorney's fees, and community debt (HOA arrearages). Declining to set a purge amount, the court ordered that in the event Husband "fail[ed] to pay the amounts ordered, [Wife] may offset the amounts owed" from Husband's "share of the sale of the marital property and the refinancing of the [commercial] building."

¶56        Although this court lacks jurisdiction over a civil contempt adjudication on direct review, *Henderson v. Henderson*, 241 Ariz. 580, 587, ¶ 16 (App. 2017) (explaining contempt findings are reviewable only by special action), Husband does not challenge the superior court's finding that he failed to comply with temporary and interim orders. Instead, he argues that the superior court could not impose a conditional lien – thereby potentially reducing his equity in jointly-held marital assets – without violating A.R.S. § 25-318(A).

¶57          Section 25-318 governs the disposition of property in a dissolution proceeding. As outlined in subsection (A), the superior court must divide "community, joint tenancy and other property held in common equitably, though not necessarily in kind." And, as Husband notes, this division must be made "without regard to marital misconduct." A.R.S. § 25-318(A). But applying subsection (A) to these facts, the superior court did not run afoul of the statutory mandate. On the contrary, the court ordered Wife to pay Husband one-half of the equity in both the marital residence and the commercial building – a precisely equal share.

¶58          Notably, Husband fails to acknowledge that A.R.S. § 25-318(E) expressly permits a court to "impress a lien on . . . marital property awarded to either party in order to secure the payment of," as relevant here, community debts, child support, and spousal maintenance. A.R.S. § 25-318(E)(2), (3). Having equitably divided the jointly held property under subsection (A), the superior court acted well within its authority by imposing a conditional lien offsetting Husband's equity in the marital residence and commercial building against debts he owed to Wife. Simply put, the superior court correctly applied A.R.S. § 25-318 to both equitably divide the community assets and secure payment of Husband's prior debts to Wife, in the event he failed to timely extinguish those debts before the sale and refinance of the marital residence and commercial building, respectively. The superior court had the statutory authority to grant such relief within the dissolution decree as part of its equitable division of the community property.

## IX.    Post-Decree Orders

¶59          Husband challenges the superior court's post-decree rulings on Wife's motions to amend and clarify the judgment. He asserts that Wife's motion to amend was untimely and that the superior court improperly granted both motions without providing him an opportunity to respond.

¶60          We review a superior court's rulings on motions to amend or clarify the judgment for an abuse of discretion. *See Wisniewski v. Dolecka*, 251 Ariz. 240, 241, ¶ 5 (App. 2021). "A court abuses its discretion if it applies an incorrect rule of law." *Id.*

¶61          As outlined in Rule 83, "[t]he court may on its own or on motion alter or amend all or some of its rulings" on certain enumerated grounds. Ariz. R. Fam. Law P. 83(a)(1). A party seeking Rule 83 relief must file a motion "no[] later than 25 days after the entry of [a Rule 78 final] judgment." Ariz. R. Fam. Law P. 83(c)(1). "This deadline *may not* be

extended by stipulation or court order" unless: (1) the moving party did not receive notice of the entry of judgment within 21 days after its entry; (2) the moving party files the motion within 30 days after the specified time to act expires or within 7 days after receiving notice of the entry of the judgment; *and* (3) no party would be prejudiced by extending the time to act. Ariz. R. Fam. Law P. 83(c)(1) (emphasis added); Ariz. R. Fam. Law P. 4(b)(2). "Within 15 days of the filing of a motion" under Rule 83, "the court must either summarily deny the motion or set a deadline for a response." Ariz. R. Fam. Law P. 83(c)(2). "The court *may not* grant a motion without providing the non-moving party an opportunity to file a response." *Id.* (emphasis added).

¶62 Applying Rule 83 here, it is undisputed that Wife filed her motion to alter or amend the decree on April 6, 2021 (asserting clerical errors in the dissolution decree related to the marital residence and a business checking account), more than 25 days after the superior court entered the March 9, 2021 dissolution decree, which contained a certification of finality under Rule 78. Although Wife acknowledged the untimeliness of her motion, she did not assert that her delay was excused under Rule 4(b)(2)'s limited exception. Rather, she stated that she could not draft the motion by the "suggested deadline" and asked for an extension, arguing Husband would sustain no prejudice.

¶63 On the same day, Wife filed her motion for clarification (asserting clerical errors in the dissolution decree related to the commercial building). Although not a time-extending motion, a party may file a motion for clarification at any time "if [a] ruling is confusing or is susceptible to more than one reasonable interpretation." Ariz. R. Fam. Law P. 84(a), (b). Unless ordered by the court, a party may not file a response to a motion for clarification. Ariz. R. Fam. Law P. 84(c). Like Rule 83, however, a "court may not grant a motion for clarification without providing the nonmoving party an opportunity to file a written response." *Id.*

¶64 Without ordering Husband to respond, the superior court granted both Wife's motions. Because Wife's Rule 83 motion was untimely and Husband was not permitted to respond to either motion, we vacate both rulings granting Wife's requested relief. *See Vincent v. Shanovich*, 243 Ariz. 269, 271, ¶ 8 (2017) (explaining the superior court "may correct judgmental errors only within [the] limited time frames" delineated in the governing procedural rules); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (holding each party has a fundamental right to be heard "at a meaningful time and in a meaningful manner") (quotation and citation omitted).

## CONCLUSION

**¶65**      For the foregoing reasons, we affirm the decree of dissolution and vacate the post-decree rulings on Wife's motions to amend and clarify the judgment, and remand for proceedings consistent with this decision. Both parties request an award of attorney's fees under A.R.S. § 25-324, alleging that the other has been unreasonable and not acted in good faith/argued contrary to the facts and law.[4] We do not find that Wife's appellate arguments or positions have been unreasonable or submitted in bad faith. She has prevailed on all claims other than Husband's challenges to the post-decree rulings and, in her answering brief, Wife acknowledged that the superior court erred by failing to provide Husband an opportunity to respond to her motions to amend and clarify the judgment. Husband, on the other hand, has been unreasonable. In violation of ARCAP 13(a)(7), he raised multiple arguments for the first time on appeal or in his reply brief, without adequate citation to the record or supporting legal authority. His arguments concerning the superior court's imposition of a disclosure-violation sanction, allocation of the commercial building, award of attorney's fees to Wife, and imposition of a conditional lien are contrary to applicable statutes and court rules or misconstrue the record. Therefore, pending her compliance with ARCAP 21, we award Wife her taxable costs and reasonable attorney's fees incurred on appeal.



AMY M. WOOD • Clerk of the Court
FILED:   AA

---

[4]     We note that Husband filed his reply brief in propria persona and that Wife's appellate counsel has withdrawn as the attorney of record.